**KWAME ALLEN, Appellant/Plaintiff**

**v.**

**HOVENSA, L.L.C., Appellee/Defendant**

S. Ct. Civil No. 2010-0053

Supreme Court of the Virgin Islands

July 31, 2013

PAMELA LYNN COLON, ESQ., Law Office of Pamela Lynn Colon, LLC, St. Croix, USVI, *Attorney for Appellant*.

DAVID J. CATTIE, ESQ., CHARLES E. ENGEMAN, ESQ., Ogletree, Deakins,Nash, Smoak & Stewart LLC, St. Thomas, USVI, *Attorneys for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(July 31, 2013)

SWAN, *Associate Justice*. Appellant Kwame Allen appeals from the Superior Court's July 30, 2007 Order, which granted a motion to compel arbitration filed by Appellee HOVENSA, L.L.C., as well as a July 20, 2010 Order affirming the resulting arbitration award. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 23, 2002, Allen applied for employment with Wyatt V.I., Inc., a company that performed various services at HOVENSA's refinery on St. Croix, U.S. Virgin Islands. As part of his employment application, Allen signed a contract that contained, in pertinent part, the following dispute resolution provision:

> EMPLOYER and EMPLOYEE agree that any controversy or claim arising out of or relating to this contract, the relationship between EMPLOYEE and EMPLOYER (including, but not limited to, claims for discrimination), EMPLOYEE's presence at the HOVENSA refinery, or any breach of this contract ("Claims"), shall be settled by arbitration in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association . . . . The Claims covered by this agreement to arbitrate include, but are not limited to, claims for wages or other compensation due; claims for any breach of contract or covenant, express or implied; tort claims; claims for wrongful discharge; claims for discrimination, including but not limited to discrimination based upon race, sex, religion, national origin, age, marital status, handicap, disability or medical condition; and claims for violation of any federal, territorial, or other governmental constitution, statute or regulation. . . . This agreement extends to disputes with or Claims against Wyatt V.I., Inc., HOVENSA, L.L.C., and any of their shareholders, related or affiliated companies, entities, or individuals (as intended third party beneficiaries).

(J.A. 17.)

Wyatt hired Allen as a "Pipefitter Helper." However, on September 17, 2004, Allen tripped on a rag and fell down a staircase. Shortly thereafter, on September 30, 2004, Allen filed a complaint against HOVENSA in the Superior Court, alleging that his injuries were the result of HOVENSA's negligence. After nearly two years of minimal activity, HOVENSA, relying on the dispute resolution provision in Allen's agreement with Wyatt, filed a motion to compel arbitration on August 21, 2006. Although Allen opposed the motion, the Superior Court, in a July 30, 2007 Order, found that the employment agreement was governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, compelled the parties to enter arbitration, and stayed all proceedings pending the outcome of that arbitration.

The parties appeared before an arbitrator on August 27, 2009. Ultimately, the arbitrator found that Allen had not established the elements of negligence and, consequently, awarded no damages. Allen never filed a motion to vacate the arbitration award; however, on June 1, 2010, HOVENSA moved for the Superior Court to confirm the arbitration award. In its July 20, 2010 Order, the Superior Court granted HOVENSA's motion and dismissed Allen's complaint with prejudice. Allen timely filed a notice of appeal on July 26, 2010.

## II. DISCUSSION

### A. Appellate Jurisdiction

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4. § 32(a). Since the Superior Court's July 20, 2010 Order resolved all outstanding claims between the parties, it qualifies as a final judgment. *See, e.g., Etienne v. Etienne*, 56 V.I. 686, 690-91 (V.I. 2012). Nevertheless, at oral argument, HOVENSA argued — for the very first time — that this Court lacks appellate jurisdiction because Allen failed to comply with section 12 of the FAA, which requires that a motion to vacate an arbitration award be filed within three months. 9 U.S.C. § 12. Thus, this Court directed the parties to file supplemental briefs addressing this jurisdictional issue.

We question whether section 12 applies to proceedings in the Superior Court. We have previously held that "not all provisions of the [FAA] apply to Virgin Islands local courts." *Gov't of the V.I. v. Seafarers*

*Int'l Union*, 57 V.I. 649, 656 n.3 (V.I. 2012) (citing *World Fresh Market v. P.D.C.M. Assocs.*, S. Ct. Civ. No. 2011-0051, 2011 V.I. Supreme LEXIS 29, *8 (V.I. Aug. 25, 2011) (unpublished)). Although the substantive provisions of the FAA unquestionably preempt contrary local laws, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules." *World Fresh Market*, 2011 V.I. Supreme LEXIS 29 at *6 (quoting *Toler's Cove Homeowners v. Trident Const.*, 586 S.E.2d 581, 584 (S.C. 2003)). The Supreme Court of the United States has itself acknowledged the distinction between the FAA's substantive and procedural provisions, by observing that section 4 of the FAA — which mandates use of the Federal Rules of Civil Procedure in proceedings to compel arbitration — does not apply to state courts. *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). Likewise, this Court has joined numerous other appellate courts in concluding that section 16 of the FAA — authorizing an immediate interlocutory appeal of an order denying a stay pending arbitration — applies only to federal courts. *World Fresh Market*, 2011 V.I. Supreme LEXIS 29 at *3 (collecting cases).

Nevertheless, we need not resolve the issue of whether Congress intended to extend section 12 to state and local court proceedings because HOVENSA's argument fails for another reason. It is well established that

> a statute is 'jurisdictional' if 'it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction,' while a statute is 'claims-processing' if it 'seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times,' but do[es] not intend to limit a court's authority to hear a case.

*First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011) (quoting *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03, 179 L. Ed. 2d 159 (2011)). *See also Brooks v. Gov't of the V.I.*, 58 V.I. 417, 425 (V.I. 2013) ("[W]e adopt the *Henderson* approach to the interpretation of statutory requirements, which requires that we attempt to ascertain the Legislature's intent as to whether a procedure embodied in a statute is meant to regulate the process of obtaining review or to limit the court's adjudicatory authority." (citations omitted)). "The distinction between jurisdictional and claims-processing rules . . . is not merely academic, for a claims-processing statute may be equitably tolled or judicially modified, while failure to com-

ply with a jurisdictional statute can never be excused" and such failure may be invoked at any stage of the proceedings, even by the court *sua sponte*. *First Am. Dev. Group/Carib, LLC.*, 55 V.I. at 611 (citing *Bowles v. Russell*, 551 U. S. 205, 214, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007)). And "because claims-processing rules are equivalent to the statute of limitations and other affirmative defenses, litigants who seek to invoke a claims-processing rule to dismiss or limit an appeal must do so at the first opportunity prior to the case becoming fully briefed." *In re Guardianship of Smith*, 54 V.I. 517, 524 n.5 (V.I. 2010) (citing *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 327-28 (3d Cir. 2010)).

■ We agree with the appellate courts that have repeatedly held that section 12 of the FAA does not establish a jurisdictional requirement, but operates as a statute of limitations that may be waived by a party's failure to timely assert it. *See, e.g., Fradella v. Petricca*, 183 F.3d 17, 21 (1st Cir. 1999) (describing section 12 as "a statutory limitations period"); *Foster v. Turley*, 808 F.2d 38, 41 (10th Cir. 1986) (opining that FAA three-month requirement is "in the nature of a statute of limitations, which is subject to waiver. (citations omitted)"); *Holcim (Texas) Ltd. Partnership v. Humboldt Wedag, Inc.*, 211 S.W.3d 796, 801-02 (Tex. App. 2006) ("[S]ection 12 has been consistently treated as a statute of limitations rather than a jurisdictional prerequisite." (citations omitted)). Consequently, to the extent section 12 applies to proceedings commenced in Virgin Islands local courts, HOVENSA has waived its protections by waiting until appellate oral argument to assert the provision.

### B. Standard of Review

Our review of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). We exercise plenary review of a court's conclusion that an arbitration clause is enforceable. *Alexander v. Anthony, Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999)). Likewise, we exercise plenary review over a court's determination whether the right to compel arbitration has been waived. *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200, 53 V.I. 901 (3d Cir. 2010). And, a court's determination of the scope of an arbitration agreement is also subject to plenary review. *Id.*

## C. Waiver of Right to Compel Arbitration

Allen, for his first issue on appeal, claims that HOVENSA waived its right to invoke the dispute resolution clause of the January 23, 2002 agreement. Specifically, Allen argues that HOVENSA, by waiting approximately two years to file its motion to compel arbitration and benefiting from discovery, essentially consented to having Allen's claims adjudicated in the Superior Court. In contrast, HOVENSA attributes the two-year delay to its erroneous belief that it had previously filed a motion to compel arbitration, which it rectified upon realizing its mistake.

■ We agree that HOVENSA did not waive its right to compel arbitration. A party waives the right to compel arbitration when it delays invoking the right and prejudice results from the delay. *See, e.g., Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 926-27 (3d Cir. 1992) ("A determination of prejudice . . . relevant to a finding of waiver . . . incorporates not only the timeliness or lack thereof of a motion to arbitration but also [, *inter alia*,] . . . the extent to which both parties have engaged in discovery." (citations omitted)). Thus, " '[m]erely answering on the merits . . . or participating in discovery, without more, will not necessarily constitute a waiver' " of arbitration; for a waiver to occur, the party must have "engaged in extensive discovery" or sought a judicial disposition on the merits, such as by filing a motion to dismiss for failure to state a claim. *Id.* at 925 (quoting *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975)).

■ We agree with Allen that the proceedings were delayed as a result of HOVENSA's apparently inadvertent failure to file a motion to compel arbitration for approximately two years. Nevertheless, "delay alone does not constitute sufficient prejudice to support waiver." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 223, 48 V.I. 1034 (3d Cir. 2007). Rather, the party opposing arbitration bears the burden to show how the delay resulted in prejudice. *See, e.g., Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) ("Palcoko has failed to show what adverse effects, if any, she has suffered within th[e] short period of time" between the filing of the lawsuit and the motion to compel arbitration); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680-81 (3d Cir. 2000) (rejecting claim that delay in filing motion to compel, without more, resulted in prejudice); *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1070 (3d Cir. 1995) ("Faragalli has neither shown nor demonstrated prejudice

due to this two month 'delay' [in moving to compel arbitration]."). In other words, "prejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth*, 980 F.2d at 925.

■■ Here, we cannot conclude that Allen met his burden of proving that he suffered any prejudice as a result of HOVENSA's delay in filing its motion to compel arbitration. The record reflects that HOVENSA never responded to interrogatories, requested production of documents, nor participated in depositions or court-ordered mediation. *Ehleiter*, 482 F.3d at 223. While some discovery did occur in this case, all of the discovery had been initiated by Allen — in the absence of a scheduling order set by the Superior Court — and the record contains no evidence that HOVENSA was "able to . . . conduct discovery not available in the arbitration forum" or otherwise acted as more than a passive participant. *Hoxworth*, 980 F.2d at 925. Nor did HOVENSA move for dismissal or summary judgment; it only filed an answer, a stipulation for substitution of counsel, and several requests for an extension of time. In other words, HOVENSA did not participate in the Superior Court matter to such an extent as to have required Allen to spend "substantial amounts of time, effort, and money" litigating the matter in the Superior Court before HOVENSA filed its motion to compel arbitration. *Ehleiter*, 482 F.3d at 224 & n.16. Accordingly, since Allen has failed to show prejudice, we hold that HOVENSA did not waive its right to enforce the dispute resolution clause, and that the Superior Court did not err in granting HOVENSA's motion to compel arbitration on this basis. *See Hoxworth*, 980 F.2d at 926 ("[W]aiver is not favored . . . ." (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983))).

## D. Scope of Dispute Resolution Clause

Allen also argues that the dispute resolution provisions in the January 23, 2002 agreement were not intended to encompass personal injury claims against HOVENSA, for "[t]he terms of the arbitration agreement between Wyatt and [Allen], and the context in which that agreement was signed, show that the arbitration agreement was intended to cover only labor disputes arising out of employment decisions." (Appellant's Br. 19.) In its July 30, 2007 Order, the Superior Court rejected this argument because "[t]he contract is clearly meant to encompass any controversy or claim arising out of or relating to 'Employee's presence at the facility'

including tort claims," and that "the agreement is clear as to what claims are subject to arbitration and the type of claim brought in this case is specifically identified within the agreement as being subject to arbitration." (J.A. 138-39.)

██ ██ We agree with the Superior Court. "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.' " *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S. Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). The United States Court of Appeals for the Third Circuit, in interpreting a virtually identical dispute resolution contract prepared by Wyatt and identifying HOVENSA as a third-party beneficiary, expressly found that "[t]he references to presence at the HOVENSA refinery must be read in light of this purpose — employment at the non-defendant contractors." *Mendez v. P.R. Int'l Companies, Inc.*, 438 Fed. Appx. 161, 164 (3d Cir. 2011). And contrary to Allen's claim that the agreement only intended to cover labor disputes, the dispute resolution provision clearly states that it encompasses "tort claims." (J.A. 17.) Since Allen's complaint states that his injuries occurred after he "reported to work" and was "walking to the loading area for the bus that would take him to his work site within the Refinery," (J.A. 6), his claims clearly fall within the dispute resolution provisions.

### E. The Dispute Resolution Clause is Not Unconscionable

Allen further contends, even if the agreement encompasses his tort claims, that the dispute resolution provision is unconscionable. He contends that he was "directed to sign the [employment] agreement . . . without a full opportunity to read or discuss the agreement with any representative of Wyatt" or to "negotiate its terms with any representative," and avers that he was told that he would not be hired if he did not sign the agreement. (J.A. at 94-95.) In other words, Allen argues that the January 23, 2002 agreement is unconscionable simply because it was a contract of adhesion.

██ We disagree. The Third Circuit, in another case interpreting a similar dispute resolution clause, characterized it as an adhesion contract. *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362, 49 V.I. 1133 (3d Cir. 2007). But as the Supreme Court of the United States has instructed —

439

after the *Edwards* decision — the mere fact that a contract is adhesive does not — without more — render it unconscionable. *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749-50, 179 L. Ed. 2d 742 (2011) ("[T]he times in which consumer contracts were anything other than adhesive are long past." (citation omitted)). Thus, "a party challenging a contract on unconscionability grounds must also show that the contract is substantively unconscionable by demonstrating that the contract contains 'terms unreasonably favorable to the stronger party.' " *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 201, 53 V.I. 901 (3d Cir. 2010) (quoting *Alexander*, 341 F.3d at 265); *see also Edwards*, 497 F.3d at 364 (finding dispute resolution clause, while procedurally unconscionable, nevertheless enforceable because it is not substantively unconscionable).

 In his appellate brief, Allen discusses only two terms that he believes are substantively unconscionable.[1] First, Allen argues that the costs of arbitration are "prohibitively expensive," (Appellant's Br. 27), because the agreement requires the employee to "advance one half of any filing fee required by AAA, up to a maximum of $500.00," and provides that "[t]he remaining expenses . . . shall be divided equally between the parties." (J.A. 90.) We agree that such a provision could potentially be unconscionable if it results in the arbitral forum becoming prohibitively expensive as a means of obtaining redress. *Parilla v. IAP Worldwide Services VI, Inc.*, 368 F.3d 269, 278-79 (3d Cir. 2004). Allen ignores, however, that the agreement also provides that "[u]pon a written request to the Arbitrator by EMPLOYEE demonstrating financial hardship or financial inability to pursue the claim, EMPLOYER will be responsible for the remaining expenses and costs of the arbitration." (J.A. 90.) *See In re Poly-America, L.P.*, 262 S.W.3d 337, 356 (Tex. 2008) ("Luna has not demonstrated that the ability to pursue his claim in the arbitral forum hinges upon his payment of the estimated costs; to the contrary, depending upon the circumstances, Luna may not have to bear any cost at all . . . ."); *see also Berrios v. Hovic*, No. Civ. 05-CV-192, 2010 U.S. Dist. LEXIS 56772, *19 (D.V.I. June 9, 2010) (unpublished) (litigant

---

[1] In his appellate brief, Allen also contends that the dispute resolution provision is substantively unconscionable because it "attempts to limit the remedies an arbitrator may award beyond any statutory or common law limits." (Appellant's Br. 29.) However, Allen's entire argument on this point consists of a single sentence, "unaccompanied by some effort at developed argumentation," and thus has been waived for purposes of appeal. *Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009) (collecting cases); V.I.S.CT. R. 22(m).

cannot show likelihood of incurring prohibitive costs if dispute resolution agreement includes provision allowing litigant to avoid expenses by showing financial inability to pay) (citing *Lloyd v. Hovensa LLC*, 243 F. Supp. 2d 346, 350 (D.V.I. 2003), *rev'd on other grounds*, 369 F.3d 263 (3d Cir. 2004)). Importantly, the record reflects that Allen was, in fact, actually able to arbitrate his claim as mandated by the July 30, 2007 Order. And while Allen also argues that the agreement could be interpreted as requiring the losing party to pay the prevailing party's costs and attorney's fees, the arbitrator ruled that Allen and HOVENSA would each bear their own costs. (J.A. 175.)

 Allen also alleges that the agreement is substantively unconscionable because it shortens the statute of limitations to only 180 days. However, " 'a provision limiting the time to bring a claim or provide notice of such a claim to the defendant is not necessarily unfair or otherwise unconscionable,' [but] the time period designated by the agreement must . . . be reasonable." *Nino*, 609 F.3d at 202 (quoting *Alexander*, 341 F.3d at 266; citing *Parilla*, 368 F.3d at 277-78). We agree with the numerous appellate courts that have held that a six month limitations period is reasonable. *See, e.g., Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357, 116 Fed. Appx. 638 (6th Cir. 2004) ("[T]here is nothing inherently unreasonable about a six-month limitations period contained in an employment agreement." (citation omitted)); *Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1042-44 (9th Cir. 2001) (holding a six-month filing requirement not unconscionable). And again, the 180-day limitations period did not impair Allen's right to arbitrate his claims — on the contrary, the record reflects that Allen filed his complaint in the Superior Court less than two weeks after the incident that gave rise to his tort claims occurred. Consequently, the Superior Court committed no error when it rejected Allen's unconscionability argument.

## F. Workers' Compensation Act

Finally, Allen asserts that the dispute resolution provision in the January 23, 2002 agreement is inconsistent with the Virgin Islands Workers' Compensation Act ("VIWCA"), codified as 24 V.I.C. §§ 250 through 292. According to Allen, section 284 of title 24 establishes a claim for worker's compensation benefits as his exclusive remedy against his employer, Wyatt, and, relying on the Restatement (Second) of Contracts and cases from other jurisdictions, Allen asserts that

441

HOVENSA, as a third-party beneficiary to his agreement with Wyatt, cannot obtain "greater rights than [himself] or Wyatt to arbitrate this claim." (Appellant's Br. 10.)

 Allen's argument lacks merit. Even assuming — without deciding — that the substantive provisions of the FAA do not preempt the VIWCA and other relevant Virgin Islands local laws in this particular case,[2] Allen has failed to provide this Court or the Superior Court with a Certificate of Government Insurance Coverage or other evidence that Wyatt is, in fact, an insured employer for purposes of the VIWCA. *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 624-25 (V.I. 2012). And even if we were to assume that Wyatt is an insured employer, Allen's claim rests on the incorrect premise that section 284 forbids Wyatt from arbitrating any potential claim asserted by Allen. Section 284, by its own terms, provides that worker's compensation represents the exclusive remedy for the

---

[2] This Court has previously recognized that section 2 of the FAA preempts contrary state or local laws. *World Fresh Market*, 2011 V.I. Supreme LEXIS 29 at *7; *see also Southland Corp.*, 465 U.S. at 10 (noting that section 2 "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration"). However, because the FAA is premised on Congress's power to regulate interstate commerce — and not Congress's plenary powers under the territorial clause — the Third Circuit has held that, even in the context of Virgin Islands local courts, "a contract comes within the purview of the FAA only when an interstate nexus is shown," which "coincides with that of the Commerce Clause." *Gov't of the V.I. v. United Indus. Workers*, 169 F.3d 172, 176, 40 V.I. 489 (3d Cir. 1999). In other words, in the absence of an interstate nexus, the FAA will not preempt a local Virgin Islands statute, even if it would otherwise be inconsistent with the FAA. *See, e.g., Jim Parker Bldg. Co. v. G&S Glass & Supply Co.*, 69 So.3d 124, 133 (Ala. 2011) ("The party seeking to compel arbitration has the initial burden of proving the existence of a written contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce."); *Arkansas Diagnostic Center, P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884, 892 (2007) ("We do not interpret the jurisprudence concerning the FAA to include any and every contract" containing an arbitration clause. "[T]he question is simply whether the *contract* evidences a *transaction* involving commerce . . . . [I]t is the burden of the party seeking to compel arbitration to prove that the contract at issue involves commerce.").

In this case, we note that HOVENSA never alleged — and the Superior Court never found — that the employment agreement between Allen, a Virgin Islands resident, and Wyatt, a Virgin Islands corporation that provides services exclusively at an oil refinery located in the Virgin Islands, affects interstate commerce. Rather, it appears that the parties and the Superior Court both accepted HOVENSA's incorrect assumption that the FAA applies to all arbitration agreements. (J.A. 13 (stating that FAA mandates arbitration simply because the agreement states that tort claims are subject to arbitration).) Nevertheless, since Allen's claim fails regardless of whether section 2 of the FAA preempts the VIWCA, we need not make this determination for the first time on appeal.

*employee*; it does not purport to limit the employer. As this Court has recently observed, "courts have consistently held that an employer may *voluntarily* waive the broad immunity conferred by a workers' compensation statute . . . ." *Defoe v. Phillip*, 56 V.I. 109, 135 (V.I. 2012) (emphasis in original) (collecting cases), *aff'd*, 702 F.3d 735 (3d Cir. 2012). In other words, Wyatt could — if it chose to do so — waive its section 284 immunity and arbitrate any potential dispute with Allen. Thus, the arbitration agreement does not confer HOVENSA with any greater rights than those available to Wyatt.

## III. CONCLUSION

For the foregoing reasons, we find no basis to disturb the Superior Court's July 30, 2007 and July 20, 2010 Orders. Accordingly, we affirm.