IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

OWEN WILLIAMS, )
                   Plaintiff, )
            v. )
       )
GROUNDWATER AND ENVIRONMENTAL )
SERVICES, INC., AND CHRISTIANSTED )
EQUIPMENT, INC., )
                 Defendants. )

CIVIL NO. SX-18-CV-552

ACTION FOR DAMAGES

**2020 VI Super 001**

## MEMORANDUM OPINION and ORDER OF REFERRAL TO ARBITRATION

¶ 1    THIS MATTER comes before the Court on Defendant Christiansted Equipment, Ltd.'s[1] (CE) Motion to Dismiss Proceedings Pending Arbitration, filed December 31, 2018, joined by Defendant Groundwater Environmental Services, Inc. (GES) on January 28, 2019; Plaintiff's Opposition, filed February 7, 2019;[2] Defendant CE's Reply and Defendant GES' Reply, both filed February 27, 2019. For the reasons that follow, the Court concludes that the arbitration agreement (Agreement) contained in the employment contract between Plaintiff Owen Williams and Pinnacle Services, LLC is enforceable by Defendant CE and by Defendant GES and that Plaintiff's claims against each must be resolved in arbitration. Accordingly, the Motion will be granted. However, rather than ordering the discretionary dismissal of the case as sought by the Motion, because the terms of the Agreement require that arbitration take place pursuant to the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1-16), the Court will order these proceedings stayed pending arbitration pursuant to section 3 of the FAA (9 U.S.C. § 3).

## BACKGROUND

¶ 2    Plaintiff Williams, a citizen and resident of St. Croix, was employed as a Heavy Equipment Operator by Pinnacle Services, LLC at the St. Croix facility of Limetree Bay Terminals, LLC

---

[1] Christiansted Equipment. Ltd. is incorrectly designated in the Complaint as Christiansted Equipment, Inc.

[2] Plaintiff's Opposition was filed within14 days of Defendant GES' joinder in CE's Motion. (V.I. R. Civ. P. 6-1(f)(1))

(Facility), pursuant to Hourly Employment Agreement, dated August 14, 2017. Plaintiff claims that

he was injured on September 12, 2017 while changing out a windshield of a front-end loader at

Limetree's Facility. Plaintiff's Complaint was filed November 21, 2018. Defendant CE responded

with its Motion, joined by GES, based on the Agreement which reads in relevant part:

> Except as provided below in this section, all claims, controversies or disputes (collectively referred to as "claims" for purposes of this Agreement), whether by Employer or Employee, arising out of or in any way relating to this Agreement or to Employee's employment by Employer, or the termination of that employment, or for bodily injury or property damage, or arising out of or related to Employee's presence (during the term of Employee's employment by Employer) at The Facility…shall be resolved solely and exclusively by arbitration as provided in this Agreement.
>
> In addition, Employee specifically agrees that all claims, accruing from this day forward, that Employee may have at Pinnacle Services, LLC or Groundwater and Environmental Service, Inc (GES) or Limetree Bay Terminals Storage Facility or the Hovensa refinery (collectively Facility) against, involving or arising out of employment at the Facility against Pinnacle, LIMETREE Bay Terminals LLC, Hovensa LLC, The Hovensa Liquidating Trust and the Hovensa Environmental Responses Trust, Government of the Virgin Islands and any Contractor at the Facility…, all as intended third-party beneficiaries of this Agreement (all of the foregoing shall be collectively referred to as "Pinnacle Services, LLC" or "Groundwater and Environmental Service, Inc (GES)", as applicable, for purposes of this agreement to arbitrate) arising out of or in any way relating to Employee's employment by Employer, or the discipline, lay off or termination of that employment, or for bodily injury or property damage, or arising out of or related to Employee's presence (during the term of Employee's employment by Employer) at The Facility shall be resolved solely and exclusively by arbitration as provided in this Agreement.
>
> …The parties also agree to arbitrate the issue of arbitrability of any claim. The arbitrator shall decide all issues of arbitrability including, but not limited to, any defenses to arbitration based on waiver, delay, or like defense. The arbitrator shall also decide whether all conditions precedent to arbitrability have been fulfilled. The parties agree that matters of substantive and procedural arbitrability shall be decided exclusively by arbitration.
>
> … Arbitration shall take place pursuant to the Federal Arbitration Act (Title 9 U.S. Code Sections 1-16 as they may be from time to time amended) and in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association (www.adr.org), as they shall be amended from time to time…. Agreement, §§ 14, 15, 17.

*Owen Williams v. Groundwater & Environmental Service, Inc.*; SX-18-CV-552
Memorandum Opinion and Order of Referral to Arbitration
Page 3 of 11

2020 VI Super 001

¶ 3    CE and GES each assert that the Agreement is a valid and enforceable contract that must be upheld according to its terms, and that Plaintiff's claims against each in this matter must be referred to arbitration. The Motion argues that pursuant to the FAA, a written provision in any contract evidencing a transaction involving commerce to settle a controversy arising out of such contract or transaction by arbitration is valid, irrevocable and enforceable. 9 U.S.C. § 2. CE and GES also assert that each is specifically referenced in the Agreement as a designated third-party beneficiary of its arbitration provisions, such that each may invoke its terms and require that Plaintiff's claims be determined in arbitration.

¶ 4    Williams responds that the Agreement is unenforceable, first, as to CE, because CE is neither a party to nor a third-party beneficiary of the Agreement. As an adjunct to that argument, Williams argues that because the Agreement is a contract of adhesion and vague, it is both procedurally and substantively unconscionable and, therefore, cannot be enforced by CE. Second, as to both Defendants, Williams argues that they have failed to meet their burden of showing that the Agreement evidences a transaction affecting interstate commerce, and therefore the FAA does not apply, and the Agreement is unenforceable.

## DISCUSSION

### CE as Third-Party Beneficiary

¶ 5    It is well established that arbitration agreements are enforceable as a matter of Virgin Islands law. *See Gov't of the V.I. v. United Indus., Svc., Transp., Prof. & Gov't Workers of N.A.*, 64 V.I. 312, 330 (2016) (discussing the "basic principle that parties are generally free to structure their arbitration agreements as they see fit"). The law will ensure "that private agreements to arbitrate are enforced according to their terms." *Id.* Recognizing "that there is a strong federal policy favoring arbitration

(*Martinez v. Columbian Emeralds, Inc.*, 51 V.I. 174, 191 (V.I. 2009)), "any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of finding coverage." *Daniel v. Treasure Bay V. I. Corp.*, 62 V.I. 423, 426 (V.I. Super. 2016) (citations omitted).

¶ 6      Applying basic principles of contract law, the Court looks to the language of the Agreement to determine whether CE is an intended third-party beneficiary such that Williams' claims against CE must be resolved in arbitration. A third-party beneficiary may enforce an arbitration agreement. *Fay v. Ambient Technologies, Inc.*, 2009 U.S. Dist. LEXIS 52136, at *5 (D.V.I. 2009). When seeking to compel arbitration, a third-party beneficiary will be bound by contract terms where the claim arises out of the underlying contract to which it was an intended third-party beneficiary, to the extent that the dispute is covered by the contract. *Id.* (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001)). To prove intended beneficiary status, the third-party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third-party. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 555 (V.I. 2012). The contract "need not name a beneficiary specifically or individually in the contract; instead, it can specify a class clearly intended by the parties to benefit from the contract." *Id.* at 555-56 (citations omitted).

¶ 7      Here, as a contractor at the Limetree Facility, CE is specified as an intended third-party beneficiary of the Agreement, part of "a class clearly identified by the parties to benefit from the contract." CE Reply, Exh. E, Mckenna Declaration, at ¶ 4 ("Christiansted Equipment is a contractor at the Limetree Bay Terminal Storage Facility on St. Croix, USVI."). The Agreement provides that its arbitration provision applies to "all claims, accruing from this day forward, that Employee may have at... Limetree Bay Terminals Storage Facility... against... *any Contractor at the Facility ... as intended third-party beneficiaries of this Agreement...*" Agreement ¶ 14 (emphasis added).

*Owen Williams v. Groundwater & Environmental Service, Inc.*; SX-18-CV-552
Memorandum Opinion and Order of Referral to Arbitration
Page 5 of 11

2020 VI Super 001

¶ 8    CE is among the class of intended beneficiaries and Williams' claims against CE are among the types of claims covered by the contract language. Williams claims that he "suffered physical injuries" (Complaint ¶ 18) in the Limetree Bay Facility during the regular course of his employment. The Agreement applies to claims "arising out of or in any way relating to this Agreement or to Employee's employment by Employer... or for bodily injury arising out of or related to Employee's presence (during the term of Employee's employment by Employer) at The Facility." *Id.* According to the ordinary terms of the language of the Agreement, CE is an intended third-party beneficiary, Williams' claims are covered and both parties are bound by the contract terms. Accordingly, CE is entitled to enforce the Agreement's arbitration provision.

¶ 9    Williams argues that permitting CE to enforce the arbitration provision would render the Agreement procedurally and substantively unconscionable. He contends that because he "had no choice but to sign Pinnacle's employment agreement containing the arbitration provision if he wanted to stay employed and make a living," the Agreement constitutes an unenforceable adhesion contract. He claims that "the terms of the arbitration clause are so vague that Plaintiff could not possibly know what he was consenting to and to what entities he was agreeing to arbitrate claims against." Opposition, at 9.

¶ 10    The doctrine of unconscionability involves both "procedural" and "substantive" elements. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (citations omitted). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). A contract of adhesion "is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Id.* (quoting *Trailer Marine Transp. Corp. v. Charley's*

*Owen Williams v. Groundwater & Environmental Service, Inc.*; SX-18-CV-552
Memorandum Opinion and Order of Referral to Arbitration
Page 6 of 11

2020 VI Super 001

*Trucking, Inc.*, 20 V.I. 282, 284 (V.I. Terr. 1984)). Substantive unconscionability, on the other hand, "refers to terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.* (citing *Harris*, 183 F.3d at 181) (citations omitted).

¶ 11    It is well established that "the mere fact that a contract is adhesive does not—without more—render it unconscionable." *Allen v. Hovensa, L.L.C.*, 59 V.I. 430, 440 (V.I. 2013) (citing *AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749–50 (2011)). "[A] party challenging a contract on unconscionability grounds must also show that the contract is substantively unconscionable by demonstrating that the contract contains 'terms unreasonably favorable to the stronger party.'" *Id.* (quoting *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 201 (3d Cir. 2010)).

¶ 12    Williams points to no specific language in the Agreement that he claims to be substantively unconscionable, but rather argues that the Agreement is "so vague" as to make it unconscionable. The arbitration provisions account for approximately five of the eleven pages of the Agreement. Those pages outline in detail the rights and procedures of the required arbitration of claims. Apparently, Williams' claim of vagueness relates not to any particulars of the arbitral process or forum, but rather to the fact that CE is not listed by name in the Agreement, such that he argues that he "could not possibly know what he was consenting to and to what entities he was agreeing to arbitrate claims against." Opposition, at 9.

¶ 13    The argument is unpersuasive. Williams agreed specifically to arbitrate all claims "for bodily injury" against "any Contractor at the Facility." Agreement, ¶ 14. If the Agreement were deemed a contract of adhesion and procedurally unconscionable, Williams fails to articulate any manner by which it can be seen as substantively unconscionable, favoring CE to his prejudice. The Agreement benefits and binds both Williams and CE as to all claims relating to Williams' employment at the

Facility. As Williams has not shown the Agreement to be substantively unconscionable, it will be enforced and Williams' claims against CE referred to arbitration.

Federal Arbitration Act

¶ 14    To the extent that the issue may have been previously unsettled, the Supreme Court has clarified that the FAA applies to the Virgin Islands where the party seeking to invoke an arbitration agreement establishes that the agreement has an interstate nexus. *Whyte v. Bockino*, 69 V.I. 749, 760-61 (V.I. 2018). The burden of proof to show that a contract evidences an interstate nexus is relatively low. Indeed, "for an interstate nexus to exist, the parties' agreement need not be *in* interstate commerce nor have a *substantial* effect on interstate commerce; in other words, the FAA commands the 'full reach' of Congress's commerce power." *Id.* at 761 (emphasis in original).

¶ 15    A contract is deemed to affect interstate commerce "where the economic activities of at least one of the parties demonstrates a nexus to interstate commerce." *Id.* (citing *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003). "However, the bar to establish an interstate nexus is low..." (*id.* at 762, n.10) "as even the slightest nexus is sufficient." *Id.* at 762. Here, the Agreement establishes an interstate nexus, in that Plaintiff's employment is with Pinnacle Services, LLC, "a contractor at Limetree Bay Terminal, a worldwide oil storage facility that stores oil from outside the territory." Pinnacle employs workers "from Puerto Rico, Down Island and U.S. Mainland for all phases of the Limetree work." CE Reply, Exh. C, Declaration of Robert S. Lewis, at ¶¶ 3, 5.

¶ 16    Defendant GES, specifically named beneficiary of the Agreement, is a privately-owned, continental United States-based corporation, that has clients around the world, with 29 offices in 19 states, Puerto Rico and the U.S. Virgin Islands. *Id.* Exh. D, Declaration of David Bennett, at ¶ 5. Defendant CE has worked at the Facility since 2008, providing tools, equipment and materials purchased in and shipped from the continental United States to Limetree and its contractors at the

Facility, performing administrative and payroll functions for Limetree in the continental United States, employing at the Facility persons from the continental United States. *Id.* Exh. E, Declaration of Daniel J. Mckenna, at ¶¶ 5-8. Further, the Facility at Limetree Bay Terminals where Williams was employed, is "a worldwide oil storage facility that stores oil from outside the territory." Limetree's Facility "receives oil from states in the Continental United States as well as other countries, stores that product and then loads vessels to ship back to the Continental United States or other countries." *Id.,* Exh. B, Declaration of Adam Smith, at ¶¶ 3-4.

¶ 17     In *Whyte*, the employer seeking to enforce the contractual arbitration clause argued that the employee "had managerial control over products Pueblo imports, which 'arrive to St. Croix via container ship.'" *Whyte,* 69 V.I. at 762. The Supreme Court noted that the record included no evidence that Pueblo's goods arrived by container ship, but because "the bar to establish an interstate nexus is low," the employment contract was deemed to "'affect interstate commerce' as even the slightest nexus is sufficient." *Id.* (citations omitted). Here, Williams' employer, Pinnacle, Defendants GES and CE, and the Facility where all provided services clearly reflect that the Agreement relates to economic activities that include a nexus to interstate commerce.

¶ 18     Further, in *Whyte,* the Supreme Court held that a contractual provision requiring Whyte to send any notices to Pueblo to an address in Chicago, Illinois, "regulating an important aspect of the parties' agreement is sufficient to establish an interstate nexus." *Id.* Similarly, the Agreement in issue here includes a provision regulating the parties' Agreement dispute resolution protocol, certainly "an important part of the parties' agreement." Specifically, "all claims, controversies or disputes… shall be resolved solely and exclusively by arbitration." Agreement, § 14. Such "Arbitration shall take place… in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association…" A party presenting a claim is instructed "to initiate proceedings

*Owen Williams v. Groundwater & Environmental Service, Inc.*; SX-18-CV-552
Memorandum Opinion and Order of Referral to Arbitration
Page 9 of 11

2020 VI Super 001

with the American Arbitration Association ('AAA') at any regional office of the AAA, or with the International Centre for Dispute Resolution…" *Id.* ¶ 17.[3] The Agreement also provides that any party may "notice, serve or communicate with AAA" by contacting its Vice President at 1633 Broadway, Floor 10, New York, New York 1009-6708, or International Centre for Dispute Resolution at 1633 Broadway, 20th Floor 10, New York, New York 1009-6708. *Id.* ¶ 19.

¶ 19     As in *Whyte,* where "the fact that Whyte must report to Chicago, by itself, can establish an interstate nexus," the fact that the parties agreed that the important provisions regarding resolution of all claims is to be initiated by contacts outside the Virgin Islands "by itself, can establish an interstate nexus." *Whyte,* 69 V.I. at 762 n.10. Unquestionably, the parties' Agreement "affects interstate commerce," and is enforceable according to its terms.

### Stay of Proceedings

¶ 20     By the Agreement, the parties have specifically bargained for and agreed to the applicability of the "Federal Arbitration Act, to the maximum extent permitted by applicable federal law," and specifically that "Arbitration shall take place pursuant to the Federal Arbitration Act (Title 9 U.S. Code Sections 1-16 as they may be from time to time amended)." The "'basic objective in this area is …to ensure that… arbitration agreements, like other contracts, are enforced according to their terms and according to the intentions of the parties.'" *Daniel v. Treasure Bay Virgin Islands Corp.*, 2018 VI LEXIS 128, at *9 (V.I. Super. 2018) (citing *John Educ. Administrators' Ass'n, Local 101, o.b.o. Forde*, 67 V.I. 623, 638 (V.I. 2017)). Here, the parties' intention is to have all of the provisions of the FAA apply to their dispute.

---

[3] The Court takes judicial notice that the American Arbitration Association includes regional offices throughout the United States and internationally but maintains no regional office in the Virgin Islands.

¶ 21    CE seeks an order dismissing the action, relying upon precedent that has determined discretionary dismissal of an action to be appropriate where all claims in dispute have been referred to mandatory, binding arbitration. *See Prentice v. Seaborne Aviation, Inc.*, 65 V.I. 96, 113 (V.I. Super. 2016). Contrary to this case, *Prentice* concluded that the stay provision of section 3 of the FAA, by its terms, in the absence of an agreement of the parties to the contrary, applied only to actions in courts of the United States. "While Congress, in enacting the FAA, has clearly adopted a policy favoring arbitration, there is no federal policy favoring arbitration under a certain set of procedural rules." *World Fresh Mkt. v. P.D.C.M. Assocs., S.E.*, 2011 V.I. Supreme LEXIS 29, at *6 (V.I. 2011) (citation omitted) (unpublished). Rather, "the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *St. Thomas/St. John Educ. Administrators Assn., Local 101*, 67 V.I. at 632 (citing *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

¶ 23    Here, the parties have specifically bargained for and agreed that "Arbitration shall take place pursuant to the Federal Arbitration Act (Title 9 U.S. Code Sections 1-16 as they may be from time to time amended)." By incorporating the terms of section 3 of the FAA into their Agreement, the parties agreed that the trial court presiding over the suit "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Accordingly, enforcing the terms of the parties' Agreement requires the stay of further proceedings rather than dismissal of this matter.

## CONCLUSION

¶ 24    The Court concludes that the Agreement's mandatory arbitration provision is enforceable, and that Plaintiff's claims must be resolved in arbitration. As such, Defendant's Motion Dismiss Proceedings Pending Arbitration will be granted in part. However, because the parties agreed to the

*Owen Williams v. Groundwater & Environmental Service, Inc.*; SX-18-CV-552
Memorandum Opinion and Order of Referral to Arbitration
Page 11 of 11

2020 VI Super 001

applicability of the FAA in its entirety, rather than discretionary dismissal of the action, the Court will stay further proceedings pending the conclusion of the arbitration. In light of the foregoing, it is hereby

ORDERED that Defendant Christiansted Equipment, Ltd.'s Motion, joined by Defendant Groundwater and Environmental Services, Inc., is GRANTED in part, and Plaintiff's claims against both Defendants shall be heard in arbitration consistent with the terms of the Hourly Employee Agreement between Plaintiff and his employer. It is further

ORDERED that further proceedings herein are STAYED until the arbitration has been had. It is further

ORDERED that the parties shall notify the Court upon a party's filing of a written request to initiate arbitration proceedings and shall provide notice of the status of the arbitration proceeding 240 days from the date of entry of this Order.

Dated: January ___ 8 ___, 2020.

DOUGLAS A. BRADY, JUDGE

ATTEST:
ESTRELLA GEORGE
Clerk of the Court

By:
Court Clerk Supervisor
1/14/2020